IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TOMMIE BRITTON,

      Plaintiff,

vs.                                          No. CIV 99-768 MV/KBM

LONG TERM DISABILITY
INSURANCE PLAN OF
THE LOVELACE INSTITUTES,
et al.

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, filed March 30, 2001 **[Doc. No. 28]**.  The Court having considered the motion, briefs, relevant law and being otherwise fully informed finds that the Motion for Summary Judgment is well taken and will be **GRANTED in part.**

## BACKGROUND

The factual background of this action is set forth in great detail in the Court's Memorandum Opinion and Order denying Defendant Northwestern Mutual Life Insurance Company's (Northwestern) motion for summary judgment. (Mem. Op. and Order).  Therefore, the Court declines to summarize the factual background here, other than to note the following introductory facts.  Plaintiff Tommie Britton was employed by Lovelace Institutes (Lovelace) from 1971 through 1996 as an administrative assistant and executive assistant to the corporate president and CEO.  Ms. Britton was covered by a long-term disability insurance policy issued by Northwestern to Lovelace employees.  Ms. Britton has suffered from depression throughout her

life and was diagnosed with fibromyalgia in 1994.  Ms. Britton was placed on 30-day sick leave

starting September 30, 1996 and filed for long-term disability benefits (LTDB) on December 17,

1996.  Northwestern granted her request for benefits, but determined that benefits were payable

only based on a mental disorder, and were subject to a 24-month limitation.  Ms. Britton

challenged this determination by submitting numerous letters from her treating physicians, which

documented her physical disability.  The dispute continued through 1998 and into 1999.

Ultimately, Northwestern's Quality Assurance Unit concluded that Ms. Britton's benefits would

be subject to the 24-month limitation.  Northwestern stopped paying benefits on December 19,

1998, at the expiration of the 24-month time period.

Ms. Britton filed suit under the Employee Retirement Income Security Act of 1974, as

amended, 29 U.S.C. § 101, *et seq.* (ERISA) on July 9, 1999, seeking damages for failure to pay

her the benefits to which she claimed she was entitled under the long-term disability plan, and for

breach of fiduciary duty, and requesting attorneys fees.  Thereafter, Northwestern filed for

summary judgment.  In its Memorandum Opinion and Order denying the motion, the Court ruled

that in this case, the Court must apply a *de novo* standard of review to Northwestern's disability

determination.  The Court also ruled that Northwestern erred when it concluded that Ms. Britton

had failed to provide "satisfactory written proof" that her fibromyalgia prevented her from

continued employment and when it concluded that a mental disorder includes those conditions

which are caused by or aggravated by a physical condition.  Therefore, the Court ruled, as a

matter of law, that Northwestern erred when it applied the 24-month limitation to Ms. Britton's

long-term disability claim.  Ms. Britton now seeks summary judgment on her claims that she is

entitled to disability benefits and that Northwestern breached its fiduciary duty to her.  In its

response to Plaintiff's motion, Northwestern requests that the Court reconsider its prior ruling

denying its motion for summary judgment.[1]

## STANDARD OF REVIEW

The Court has already ruled, having undertaken a thorough analysis of the question, that

the *de novo* standard of review applies to Ms. Britton's claims, *see* Mem. Op. and Order at 9-14,

and this ruling has not been disturbed.  Nonetheless, Northwestern argues in its response to

Ms. Britton's motion for summary judgment that this Court's prior ruling was in error and that

the less deferential "arbitrary and capricious" standard of review should apply.  *See* Reply [sic.] to

Mot. for Summ. J. at 13-19.  Therefore, Northwestern requests that the Court reconsider its prior

ruling.  Ms. Britton argues that the Court's application of the *de novo* standard of review was

correct, and argues further that even under the more deferential "arbitrary and capricious"

standard of review, Northwestern's disability determination should be reversed.  *See* Br. in Supp.

of Mot. for Summ. J. at 7-17.

The Federal Rules of Civil Procedure do not recognize a motion to reconsider.  Therefore,

the Court must construe such a motion in one of two ways.  *See Hawkins v. Evans*, 64 F.3d 543,

546 (10th Cir. 1995).  If the motion is filed within ten days of the district court's entry of

judgment, it is treated as a Rule 59(e) motion to alter or amend the judgment.  *See id.*  When it is

filed more than ten days after entry of judgment, it is treated as a Rule 60(b) motion for relief

---

[1]      On October 1, 1999, counsel for Defendants Long Term Disability Insurance Plan
of the Lovelace Institutes and The Lovelace Institute, n/k/a Lovelace Respiratory Research
Institute moved to withdraw and the Court granted this request.  Now, all three defendants are
being jointly represented.  Although the response to Ms. Britton's motion for summary judgment
appears to represent the position only of Defendant Northwestern, the Court will construe the
response as representing the positions of all Defendants.

from judgment.  *See id.*  The Court's Memorandum Opinion and Order was entered August 23, 2000.  Northwestern's response to Ms. Britton's motion for summary judgment was filed on April 16, 2001, almost eight months later.  Therefore, to the extent that Northwestern's response to Ms. Britton's motion for summary judgment seeks reconsideration of the Court's prior order denying its motion for summary judgment, the Court will construe it as a motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure.

With respect to Plaintiff's motion for summary judgment, the traditional standard applies. Under this standard, a court should grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).  The moving party bears the initial burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *see Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be

4

discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's position. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law.

**ANALYSIS**

**I.     Summary Judgment**

A district court may grant relief from a final judgment or order "for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . (3) fraud, . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . ; or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). District courts have "substantial discretion in connection with a Rule 60(b) motion." *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990). Northwestern does not advance any particular ground on which it believes relief is warranted; it simply states that the Court's prior ruling was incorrect. The Court will, therefore, address each of the enumerated grounds in order to determine whether any of them provides a valid basis upon which to grant Northwestern relief from the Court's prior judgment.

"Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999). There is no claim here that Northwestern made an excusable litigation mistake or that one of Northwestern's attorneys has acted without authority. Northwestern does appear to be

5

arguing that the Court made a substantive legal error in its prior judgment.  However,

Northwestern does nothing more than reiterate the issues it raised in its motion for summary

judgment, presenting precisely the same arguments that the Court has already considered and

rejected.  Absent extraordinary circumstances, "revisiting the issues already addressed 'is not the

purpose of a motion to reconsider'" filed under Rule 60(b).  *Van Skiver v. United States*, 952

F.2d 1241, 1243 (10th Cir. 1991).  Accordingly, Rule 60(b)(1) is not a valid basis upon which to

grant Northwestern relief from the Court's prior judgment.  Northwestern does not advance any

arguments to suggest that it is seeking reconsideration on grounds of newly discovered evidence

or of fraud, misrepresentation, or other misconduct of an adverse party, nor does Northwestern

suggest that the judgment is void or has been satisfied, released, or discharged.  Therefore, Rules

60(b)(2), (3), (4), and (5) provide no basis upon which to grant relief.  Rule 60(b)(6) provides

that the Court may grant relief for "any other reason justifying relief from the operation of the

judgment."  However, it is well settled that "a district court may grant a Rule 60(b)(6) motion

only in extraordinary circumstances and only when necessary to accomplish justice."  *Cashner v.*

*Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th  Cir. 1996) (citing *Lyons v. Jefferson Bank & Trust*,

994 F.2d 716, 729 (10th Cir. 1993)).  The Court does not find that there are any extraordinary

circumstances that would justify a grant of relief from judgment under Rule 60(b).  Accordingly,

to the extent that Northwestern's response to Ms. Britton's motion for summary judgment can be

construed as a motion for reconsideration, the motion will be denied.  The Court will apply a *de*

*novo* standard of review to Ms. Britton's claims.[2]

---

[2]       Because the Court rules today that Ms. Britton is entitled to summary judgment
under a *de novo* standard of review, the Court will not address Ms. Britton's claim that she is also
entitled to summary judment under the "arbitrary and capricious" standard.

In its Memorandum Opinion and Order, the Court found that the following material facts were undisputed:

1.  In 1994 Ms. Britton was diagnosed with fibromyalgia, a chronic pain syndrome which effects the fibrous tissues, muscles, tendons and ligaments.  The pain is aggravated by strain or overuse.  *See* Mem. Op. and Order at 2.

2.  Ms. Britton has suffered from depression since childhood.  *See id.*

3.  Throughout 1995 and 1996, Ms. Britton was treated for her depression by a psychiatrist, Dr. Stellman.  *See id.*

4.  In August, 1995, Ms. Britton was hospitalized for depression with a diagnosis of dysthymic disorder,[3] as well as fibromyalgia.  *See id.*

5.  On December 7, 1995 Dr. Stellman diagnosed Ms. Britton as having "[dy]sthymic disorder in addition to mood disorder *secondary to medical condition*." (emphasis added).  *See id.*

6.  Ms. Britton's symptoms related to her depression and fibromyalgia fluctuated throughout 1995 and 1996, occasionally abating and then increasing in severity.  *See id.*

7.  Ms. Britton's primary care physician, Dr. Rutschman, treated her fibromyalgia from 1994 to 1997.  On July 28, 1995, Dr. Rutschman noted that Ms. Britton experienced "less pain from fibrositis when not stressed."  *See id.*

8.  From April 1996 through May 1996 Ms. Britton was treated by Dr. Rutschman for chronic headaches which he attributed to allergies, depression and fibromyalgia.  *See id.* at 3.

---

[3]      A disorder of mood, less severe than major depression, marked by a loss of interest in activities previously enjoyed, described by the patient as a feeling of being in the dumps, and lasting more than two years.  Attorneys' Dictionary of Medicine (1994) at D-171.

9.  Ms. Britton's fibromyalgia took a turn for the worse after she suffered a bout of pneumonia in July, 1996.  *See id.*

10.  Ms. Britton's last day of active work at Lovelace was September 30, 1996.  Ms. Britton was placed on 30-day sick leave.  On  her Family and Medical Leave Act form, Dr. Rutschman noted Ms. Britton as having longstanding fibromyalgia and that "her current state is complicated by depression."  *See id.*

11.  The policy under which Ms. Britton is covered limits LTD Benefits as follows: "Payment of LTD Benefits is limited to 24 months for each period of Disability caused or contributed to by a Mental Disorder.  Mental Disorder means:  a mental, emotional or behavioral disorder"; "[t]he Policy requires that all claims for benefits must be submitted to Northwestern, and in relevant part, that [n]o [long-term disability] benefits will be paid unless Northwestern receives *satisfactory written proof:* 1. That [the claimant] became disabled while insured under the Group Policy.  ... 3.  That [the claimant's] Disability results from a cause not excluded in Part 7.  *See id.* at 4.

12.  On her Group Disability Claim Employee Statement, in answering the question, "how does your disability prevent you from working," Ms. Britton stated: "Daily migraine headaches with visual impairment.  Overwhelming fatigue many days.  Severe to moderately severe muscle pains - hands, shoulders/neck, feet, lower back.  Intermittent debilitating depression due to constant pain."  *See id.* at 5.

13.  On her Group Disability Claim Attending Physician Statement dated October 16, 1996, Dr. Stellman stated Ms. Britton's diagnosis as "major depression, recurrent," with symptoms being "persistent refractory depression, fatigue, tearfulness, loss of interest [and] poor

concentration."  Dr. Stellman further noted that Ms. Britton suffered "chronic pain symptoms for years."  Dr. Rutschman diagnosed Ms. Britton's condition as "fibromyalgia" with symptoms including radiating pain from multiple trigger points, sleep disturbance, severe fatigue, frequent disabling headaches, and progressive depression.  Dr. Rutschman also noted that Ms. Britton had a "[s]ignificant emotional or behavioral disorder such as depression, anxiety, hysteria." Dr. Rutschman further noted that Ms. Britton's "functional impairment is such that simple work activities exhaust her significantly, aggravating her situation."  Finally, he stated that Ms. Britton is "unable to work without aggravating the fatigue and in the process the fibrositis pain" and "attempts to work have caused her to deteriorate."  *See id.*

14.  On February 18, 1997, Northwestern forwarded Ms. Britton's medical file for review by Dr. Ronald Fraback, a board certified physician in Rheumatology and Internal Medicine who opined that while Ms. Britton had both fibromyalgia and depression, he believed that most patients with fibromyalgia are able to work in a sedentary occupation.  *See id.* at 6.

15.  In March 1997 Northwestern informed Ms. Britton that after reviewing the records of Dr. Rutschman and the independent physician, Dr. Fraback, her claim for disability had been approved and that Northwestern had determined that the benefits were payable based on a mental disorder, which was subject to a 24-month limitation.  *See id.*

16.  Northwestern instructed Ms. Britton to submit "any information that would indicate that the mental disorder limitation provision should not be enforced."  In response, Ms. Britton submitted an evaluation from Dr. Rutschman which opined that in Ms. Britton's case "[d]epression frequently accompanied chronic pain and...rather than being a disorder unto itself, it is the result of her underlying fibrositis (fibromyalgia)."  *See id.*

9

17. On April 14, 1997, Dr. Stellman stated that "Ms. Britton has long-term dysthymia which is separate from her fibromyalgia.  However, it is quite clear that as her fibromyalgia becomes more difficult for her to manage, there is a clear depressive reaction that...forms a combined disability."  Dr. Stellman further noted that "her depressive symptoms are clearly reactive to the degree of physical distress she is in from her fibromyalgia." *See id.* at 6-7.

18. Dr. Fraback again concluded that he did not think the record supported a finding that Ms. Britton's depression was secondary to fibromyalgia. *See id.* at 7.

19. On October 15, 1997, Plaintiff's new primary care physician, Dr. Zimmerman, notified Northwestern that "in [his] medical opinion...the depression that Ms. Britton suffers is a result of the fibromyalgia and the primary medical problem is fibromyalgia and that the depression is a secondary problem."  He later observed that "with her increasing level of physical activity...she experiences more pain." *See id.*

20. Northwestern informed Ms. Britton that they were forwarding her claim file to the Quality Assurance Unit for an independent review of Northwestern's determination and that she could submit any additional information she wanted considered in this review. *See id.*

21.  Ms. Britton submitted additional evidence that her depression was secondary to her fibromyalgia and that it was the fibromyalgia that actually impaired her ability to continue in her employment. *See id.*

22. At this point, Dr. Fraback suggested that a "Rheumatology/Psych panel IME might help clarify ongoing level of impairment."  Despite this recommendation, Northwestern did not instruct Ms. Britton to undergo a Rheumatology/Psych panel IME. *See id.* at 8.

23. On December 22, 1997 the Quality Assurance Unit informed Ms. Britton that the

mental health limitation on her claim was to be upheld.  *See id.*

24.  On March 11, 1998 Dr. Zimmerman noted that fibromyalgia was Ms. Britton's "primary sickness or injury causing inability to work."  *See id.*

25.  On November 17, 1998, Dr. Bradley J. Fancher, a second independent physician consultant retained by Northwestern, reviewed Ms. Britton's file and stated "I agree with Dr. Fraback that individuals with [fibromyalgia] should be able to perform sedentary work.  My experience is that patients with fibromyalgia are capable to doing light work."  *See id.*

26.  In February 1999 Northwestern again submitted Ms. Britton's file to the Quality Assurance Unit.  On April 30, 1999 the Quality Assurance Unit informed Ms. Britton that the prior determination applying the 24-month limitation would be upheld.  *See id.*

The Court's prior finding that those facts are undisputed has not been disturbed.  In its response to Ms. Britton's motion for summary judgment, Northwestern essentially repeats the assertions it made in its own motion for summary judgment and urges the Court to rule that there are material facts in dispute.  Northwestern has not, however, brought to the Court's attention any evidence that actually raises a genuine dispute as to any of these facts.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")  Accordingly, the Court finds that its prior ruling on this issue is correct.  All of the material facts listed above were, and remain, undisputed.

After determining that *de novo* review was the appropriate standard to be applied in this case, the Court, in denying Northwestern's motion for summary judgment, concluded as a matter of law that:

11

1.  Northwestern's application of the 24-month limitation did not conform to the documentation offered by Ms. Britton to Northwestern.  *See* Mem. Op. and Order at 15.

2.  The ample evidence submitted by Ms. Britton in support of her claim for LTDB taken together clearly demonstrates that Mr. Britton's inability to work arose from the chronic pain associated with her fibromyalgia.  *See id.* at 15.

3.  Although it is conceded that Ms. Britton suffered from depression, it is equally clear that her battle with depression was a lifelong struggle that had never prevented her from working. *See id.* at 16.

4.  Notwithstanding numerous documentation provided by Ms. Britton's physicians supporting their conclusion that Ms. Britton's fibromyalgia was of sufficient severity to prevent continued employment, Northwestern found it more appropriate to rely on the conclusions of their own consulting physicians, who never examined Ms. Britton.  Nothing in the Policy gave Northwestern discretion to substitute its own doctors' medical opinion for those of Ms. Britton's doctors.  Northwestern was obliged under the terms of the insurance policy to consider Ms. Britton's condition individually, rather than on the general experiences of most fibromyalgia patients.  *See id.*

5.  The totality of the evidence suggests that Northwestern chose to ignore the significant documentation proving that Ms. Britton's fibromyalgia was of sufficient severity to preclude her from continuing her employment in violation of its obligations under the Policy.  *See id.* at 17.

6.  Northwestern erroneously applied the mental health limitation to Ms. Britton where the evidence suggested that her depression was a symptom of her fibromyalgia and was aggravated by her physical condition.  *See id.*

7.  The evidence is clear in this case that Ms. Britton had long suffered from depression without limiting her ability to work.  The evidence also shows that depression is a symptom of the chronic pain disorder.  *See id.*

8.  The doctrine of *contra proferentem* in this case requires the Court to adopt the reasonable interpretation advanced by Ms. Britton, *i.e.*, that the phrase "mental disorder" does not include "mental" conditions resulting from or aggravated by "physical" disorders.  *See id.* at 18 (citing *Lang v. Longterm Disability Plan of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 797 (9th Cir. 1997); *Philips v. Lincoln Nat. Life Ins. Co.,* 978 F.2d 302 (7th Cir. 1992)).

9.  Northwestern erred when it concluded that Ms. Britton had not provided satisfactory proof that her fibromyalgia prevented her from continued employment, and when it concluded that a mental disorder includes those conditions which are caused by or aggravated by a physical condition.  *See id.*

10.  Northwestern incorrectly applied the mental health limitation to Ms. Britton's long term disability claim.  *See id.*

The Court finds that these legal conclusions are amply supported by the record and have not been disturbed.  Having already concluded that there is no genuine dispute as to any material fact and that Northwestern erred in limiting Ms. Britton's claim for long-term disability benefits, the Court now concludes that Ms. Britton is entitled to judgment as a matter of law.  Her motion for summary judgment will, therefore, be granted as to the question of liability.

## II.    Damages

Ms. Britton asserts in her motion for summary judgment that she received a net monthly disability benefit of $2,579.33 for twenty-four (24) months, that her age at the time of her

disability was fifty-eight (58), that the policy provides that she should receive benefits until age sixty-five (65), and that her date of birth was August 8, 1938.  Therefore, she claims that if she receives full disability benefits until age sixty-five, she will ultimately receive an additional $144,442.48.  She claims further that between the date her disability benefits terminated and March, 2001, when the motion for summary judgment was filed, $69,641.91 worth of benefits accrued.  She points to two documents in the record in support of this claim.  Northwestern disputes this calculation of the damages and asserts that the documents Ms. Britton points to do not support her claim.  Northwestern itself has not come forward with any specific evidence to dispute Ms. Britton's assertions.

The Court finds that there is a genuine dispute of material fact with respect to damages. The documents that Plaintiff points to do show that Northwestern calculated her monthly net benefit of $2,579.33, with a maximum benefit period of 24 months.  *See* NW 0118, 0121, Attached to Pl.'s Resp. to Defs.' Mot. for Summ. J.  That, however, is all that these documents show.  They do not contain any evidence of what Ms. Britton's long-term benefit will be. Ms. Britton appears to assume that one can arrive at the appropriate amount of total damages simply by multiplying the existing monthly net benefit by the number of months she has gone without benefits.  This assumption may or may not be warranted; the Court does not currently have sufficient information before it to make this determination.  It is true, as Ms. Britton contends, that under this Court's local rules, "[A]ll material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted."  D.N.M. L.R.-Civ. 56.1(b). Nonetheless, Ms. Britton is required to come forward with some evidence to support her claim that she is entitled to $144,442.48.  The evidence to which points is simply insufficient to

14

demonstrate that she is so entitled.  Accordingly, the Court will order the parties to submit

additional briefing on the question of damages.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment  **[Doc.
No. 28]** is hereby **GRANTED in part.**  Plaintiff is entitled to judgment as a matter of law on the

question of liability.  The parties are hereby ordered to submit additional briefing on the question

of damages.  Plaintiff must submit her brief within fifteen (15) days of the date this order is

entered.  Defendant will have fifteen (15) days from the date of Plaintiff's brief to file a response

brief and Plaintiff will have ten (10) days thereafter to file a reply.

**DATED** this 5th day of September, 2001.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE


Attorney for Plaintiff
Earl Norris

Attorney for Defendant
Robert St. John

15