# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

TOMMIE BRITTON,

    Plaintiff,

vs.                                            No. CIV 99-768 MV/KBM

LONG TERM DISABILITY
INSURANCE PLAN OF
THE LOVELACE INSTITUTES,
et al.

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, filed March 30, 2001 **[Doc. No. 28]**, which was granted in part pursuant to the Court's Memorandum Opinion and Order dated October 5, 2001. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that Plaintiff's motion is well-taken and will be **GRANTED in part.**

### BACKGROUND[1]

On July 9, 1999, Plaintiff Tommie Britton filed suit against Defendant Northwestern Mutual Life Insurance Company ("Northwestern") under the Employee Retirement Income

---

[1] The factual background of this action is set forth in the Court's Memorandum Opinion and Order dated August 23, 2000 denying Defendant's Motion for Summary Judgment, and the Court's Memorandum Opinion and Order dated October 5, 2001 granting in part Plaintiff's Motion for Summary Judgment . Therefore, the Court declines to summarize the factual background here.

Security Act of 1974, as amended, 29 U.S.C. §101, *et seq.* ("ERISA"). Ms. Britton sought damages for (1) Northwestern's failure to pay her the benefits to which she claimed she was entitled under the long-term disability plan issued by Northwestern to employees of Lovelace Institutes, Ms. Britton's employer, and (2) Northwestern's breach of fiduciary duty. Ms. Britton also sought attorney's fees.

Thereafter, on January 13, 2000, Northwestern filed a Motion for Summary Judgment **[Doc. No. 20]**. In its August 23, 2000 Memorandum Opinion and Order denying Northwestern's Motion **[Doc. No. 24]**, the Court ruled that in this case, the Court must apply a *de novo* standard of review to Northwestern's disability determination. The Court also ruled that Northwestern erred when it concluded that Ms. Britton had failed to provide "satisfactory written proof" that her fibromyalgia prevented her from continued employment and when it concluded that a mental disorder includes those conditions which are caused by or aggravated by a physical condition. Therefore, the Court ruled that, as a matter of law, Northwestern erred when it applied the 24-month limitation applicable to mental disorders to Ms. Britton's long-term disability claim.

On March 30, 2001, Ms. Britton filed her own Motion for Summary Judgment **[Doc. No. 28]**. In its response to Ms. Britton's Motion, Northwestern requested that the Court reconsider the prior ruling denying its Motion for Summary Judgment. In a Memorandum Opinion and Order dated October 5, 2001 **[Doc. No. 32]**, the Court denied Northwestern's Motion for Reconsideration. In addition, based on it earlier conclusions that (1) there was no genuine dispute as to any material fact and (2) Northwestern erred in limiting Ms. Britton's claim for long-term disability benefits based on the 24-month limitation applicable to mental disorders, the Court granted Ms. Britton's Motion for Summary Judgment as to the question of liability.

With regard to the issue of damages, however, the Court found that there was a genuine dispute of material fact, and that the evidence was insufficient to support Ms. Britton's claim that she was entitled to the sum of $144,442.48. Accordingly, the Court ordered the parties to submit additional briefing on the question of damages. The Court now turns to the issue of damages, based on the supplemental memoranda submitted to the Court by the parties.

**DISCUSSION**

A.  Benefits Due to Ms. Britton

    1.  Past Due Benefits

Ms. Britton claims that, as of the end of October 2001, she was entitled to $90,276.55, representing thirty-five monthly payments of $2,579.33 each that Northwestern owed, but did not pay to her, for the period December 30, 1998 through October 30, 2001. Northwestern does not dispute Ms. Britton's calculation. Northwestern does, however, contend that this amount represents benefits that were payable to her for the period from January 1999 through November 2001, as Ms. Britton was paid disability benefits through December 29, 1998. In support of this contention, Northwestern attaches to its brief as Exhibit A a portion of Ms. Britton's claim file, which notes that benefits were paid to her through this date. The Court agrees that this documentation clearly establishes that Ms. Britton received benefits through December 29, 1998.

Accordingly, it is undisputed that Ms. Britton is entitled to receive $2,579.33 for each month for which she was owed, but did not receive, disability payments from Northwestern. As this Judgment is entered on August 30, 2002, and as Ms. Britton has not received disability payments since December 29, 1998, the Court finds that Northwestern must pay Ms. Britton the

sum of $113,490.52, representing 44 monthly payments of $2,579.33 for the period January 1999 through August 2002.

   2.   Future Benefits

Ms. Britton requests an order reinstating her monthly benefits until the sooner to occur of (1) August 30, 2003 or (2) the end of her disability. Northwestern does not dispute this request. Accordingly, the Court finds that Ms. Britton is entitled to a reinstatement of her monthly benefits for the period September 1, 2002 until the sooner to occur of (1) August 30, 2003 or (2) the end of her disability.

B.   Pre-Judgment Interest

Ms. Britton requests an award of pre-judgment interest. Northwestern does not dispute that the Court has discretion to award pre-judgment interest. In considering the propriety of an award of pre-judgment interest, the Court first must determine whether such an award "will compensate the injured party," and, if so, the Court then must determine whether "the equities would preclude the award of prejudgment interest." *Eastman Kodak Co. v. Westway Motor Freight, Inc.*, 949 F.2d 317, 321 (10th Cir. 1991). In the instant case, an award of pre-judgment interest will serve to compensate Ms. Britton. Further, Northwestern has failed to demonstrate, much less allege, that the equities would preclude a pre-judgment interest award in this case. Accordingly, an award of pre-judgment interest is proper.

Ms. Britton asks the Court to compute her award of pre-judgment interest at fifteen percent per annum, which is the New Mexico state statutory rate of interest on written contracts. Northwestern contends that the Court should apply the post-judgment interest rate applicable in ERISA actions, which is "the weekly average 1-year constant maturity Treasury yield, as

published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

ERISA does not provide an interest rate for computing pre-judgment interest. Rather, in actions brought under ERISA, an award of pre-judgment interest is governed by federal common law, and the district court has "broad discretion to choose the rate by which to calculate prejudgment interest." *Snow v. Aetna Ins. Co.*, 998 F. Supp. 852, 856 (W.D. Tenn. 1998); *see also Caldwell, III v. Life Ins. Co. of North Am.*, 287 F.3d 1276, 1287(10th Cir. 2002) (the calculation of pre-judgment interest "rests firmly within the sound discretion of the trial court").

While recognizing that the law does not require the application of Section 1961(a) to calculate pre-judgment interest, this Court is persuaded that using the rate set forth therein is the better course for determining Ms. Britton's pre-judgment interest award. The federal rate serves the purpose for which pre-judgment interest is intended: "to compensate the prevailing party for not having the use of the money awarded as damages, . . . without punishing defendant." *Reid v. Prudential Ins. Co. of Am.*, 755 F. Supp. 372, 376 (M.D. Fla. 1990). In addition, "utilization of the federal rate promotes uniformity in cases brought under ERISA and discourages forum shopping." *Snow*, 998 F. Supp. at 856 (citing *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (1st Cir. 1996)). Indeed, "a review of the case law as a whole favors use of the federal rate." *Snow*, 998 F. Supp. at 856 (citing cases from the First, Sixth, Eighth and Ninth Circuits, noting the wisdom of using the federal rate); *see also Nelson v. EG&G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994) (applying the federal rate, and explaining that this rate is appropriate for determining pre-judgment interest unless there is substantial evidence that the equities of a particular case require a different rate); *Connecticut*

*Gen. Life Ins. Co. of N.Y. v. Cole*, 821 F. Supp. 193, 203 (S.D.N.Y. 1993) (finding, in court's discretion, federal rate to be appropriate for determining pre-judgment interest).

Accordingly, the Court finds that the rate set forth in Section 1961(a) is the appropriate rate for calculating Ms. Britton's award of pre-judgment interest. Ms. Britton thus is entitled to interest on her damages award, pursuant to Section 1961(a), at a rate equal to the coupon issue yield equivalent, as determined by the Secretary of the Treasury, of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the January 1, 1999 date of accrual, compounded annually, for the period beginning January 1, 1999 and ending August 30, 2002.

C.  Section 1132(c) Penalty

29 U.S.C. §1132(c) grants the district court discretion to impose a penalty of up to $100 a day on any ERISA plan administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested . . . within 30 days after such request." *Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1461 (10th Cir. 1995); 29 U.S.C. §1132(c)(1)(B).

While Ms. Britton claims that she is entitled to a daily penalty of up to $100, she has failed to identify what information "required by this subchapter" she requested and did not receive. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Ms. Britton claims only that Northwestern failed to tell her "exactly what documents she needed to provide to obtain full benefits," and that this failure was a breach of Northwestern's fiduciary duty. Plaintiff's Supplemental Brief at p. 7. This allegation is an insufficient basis for the imposition of a

penalty pursuant to Section 1132(c). Accordingly, the Court finds that a penalty is not warranted in this case.

D.      Attorney's Fees

Under ERISA, a district court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Deboard v. Sunshine Mining and Ref. Co.*, 208 F.3d 1228, 1244 (10th Cir. 2000); 29 U.S.C. §1132(g)(1). In *Gordon v. United States Steel Corp.*, 724 F.2d 106 (10th Cir. 1983), the Tenth Circuit set forth "five nonexclusive factors to guide the district court's decision in awarding fees and costs under §1132(g)(1)." *Thorpe v. Ret. Plan of Pillsbury Co.*, 80 F.3d 439, 445 (10th Cir. 1996). The *Gordon* factors are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Gordon*, 724 F.2d at 109.

The Court agrees with Ms. Britton that Northwestern is well able to satisfy an award of attorney's fees, and that her own position in this litigation is more meritorious than that of Northwestern. Thus, the second and fifth *Gordon* factors are met here. However, Ms. Britton does not contend, and this Court does not find, that the remaining three *Gordon* factors are satisfied. While Ms. Britton contends that Northwestern engaged in "many acts of bad faith" in limiting her claim for long term disability benefits, she does not provide any evidence of such acts. Plaintiff's Supplemental Brief at p. 7. In the prior Memorandum Opinions and Orders in this case, the Court made no findings or conclusions of bad faith on Northwestern's part. Although this

Court has found error in Northwestern's decision to limit Ms. Britton's claim to 24 months, that error does not rise to the level of culpability or bad faith required to meet the first *Gordon* factor. Similarly, the Court is not persuaded that an award of attorney's fees would deter other plan administrators from applying the same definition of mental disorder under an ERISA plan. Finally, this litigation will not result in a significant benefit to other participants of the plan at issue, nor will it resolve significant legal questions regarding ERISA. *See Biava v. Insurers Admin. Corp.*, 48 F.3d 1231 (10th Cir. 1995). Because only two of the five *Gordon* factors are satisfied, and as Ms. Britton has presented no other factors for the Court's consideration in support of her request for attorney's fees, the Court finds that an award of attorney's fees is not warranted.

## CONCLUSION

Ms. Britton is hereby awarded damages in the amount of $113,490.52, representing 44 monthly benefit payments of $2,579.33 each, which she was owed but did not receive for the period January 1999 through August 2002. Further, Ms. Britton is awarded pre-judgment interest on her damages award at a rate equal to the coupon issue yield equivalent, as determined by the Secretary of the Treasury, of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the January 1, 1999 date of accrual, compounded annually, for the period beginning January 1, 1999 and ending August 30, 2002. Northwestern also shall pay to Ms. Britton post-judgment interest in accordance with 29 U.S.C. §1961(a) from the date of entry of this judgment until her award is fully paid. Finally, Northwestern shall reinstate Ms. Britton's monthly benefits of $2,579.33 for the period

September 1, 2002 until the sooner to occur of (1) August 30, 2003, or (2) the end of her disability.

Ms. Britton's applications for the imposition of a penalty pursuant to 29 U.S.C. §1132(c) and for an award of attorney's fees pursuant to 29 U.S.C. §1132(g)(1) are denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment **[Doc. No. 28]** is **GRANTED in part**. Plaintiff is entitled to judgment as a matter of law on the question of damages in accordance with this Memorandum Opinion and Order.

**DATED** this 27th day of August, 2002.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
Earl R. Norris
Oldaker, Oldaker & Norris, P.A.

Attorneys for Defendant:
Robert M. St. John
Tom Outler
Rodey, Dickason, Sloan, Akin & Robb, P.A.